Charles F. JONES, Jr., for himself and his minor son, Arronamus J. Jones, Plaintiffs–Appellees,

v.

CITY AND COUNTY OF DENVER, COLORADO; M. Fiori; M. Staskin; Denver Police Department; and Does 1 Through 30, Defendants,

and

J. Vacca; Sgt. Thiede; and Officer Webb, Defendants–Appellants.

No. 87–2167.

United States Court of Appeals, Tenth Circuit.

Aug. 12, 1988.

Robert Mark Liechty (Theodore S. Halaby of Halaby & McCrea, Denver, Colo., and H. Alan Dill of Dill, Dill & McAllister, Denver, Colo., with him on the brief), of Halaby & McCrea, Denver, Colo., for defendants-appellants.

William A. Richardson, Denver, Colo., for plaintiffs-appellees.

Before LOGAN, MOORE, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This appeal is from the district court's denial of defendants' motion for summary judgment on qualified immunity grounds, and it raises two issues. First, we must decide whether an order denying a summary judgment motion proffered on qualified immunity grounds is immediately appealable when a plaintiff has requested injunctive relief in addition to money damages. If we answer that question affirmatively, we must determine whether the district court properly denied the summary judgment motion in this case. We hold that the denial order here is immediately appealable, and we reverse the trial court's denial of the motion for summary judgment.

## I.

This civil rights suit arises out of a series of incidents between members of the Denver Police Department and the plaintiff Charles Jones. This appeal relates to searches and/or arrests that occurred on June 18, 1984, April 18, 1985, and September 1, 1985.[1] Jones alleges that the three Denver police officers pursuing this appeal acted under color of state law to deny him his fourth amendment right to be free of unreasonable searches and seizures in violation of 42 U.S.C. § 1983. Jones also alleges that one of the officers filed groundless charges against him in order to increase the bond required for Jones's release. Jones seeks both monetary and injunctive relief for these alleged violations. Before any discovery occurred, the defendants filed motions for summary judgment on qualified immunity grounds. The district court denied the defendants' motions because, in its view, there were disputed facts at issue that precluded a ruling on the qualified immunity question. The court did not specify which factual disputes precluded such a ruling. Three of the defendants, Officer Vacca, Sergeant Thiede, and Officer Webb, all of the Denver Police Department, appeal.

## II.

■ The plaintiff argues initially that this court lacks jurisdiction to review the district court's ruling on the summary judgment motion. Jones contends that because he seeks injunctive relief in addition to money damages, the court's denial order does not constitute a final order within the meaning of 28 U.S.C. § 1291. While the Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), held that a district court's denial of a summary judgment motion based on qualified immunity is immediately appealable, the Court left open the question whether such denial is appealable when a claim for injunctive relief is pending and will be tried regardless of the outcome on the qualified immunity question.[2] *Id.* at 519 n. 5, 105 S.Ct. at 2812 n. 5. This

---

1. Jones's suit also contains claims against the City and County of Denver as well as against other individual defendants. We address only those claims that are germane to this appeal.

2. The qualified immunity doctrine shields government officials from money damage liability but does not protect them from injunctive remedies. Therefore, in a case in which injunctive relief is sought, the defendants must proceed to trial on that question even if qualified immunity protects them from suit on the question of liability for money damages.

question has split the courts of appeal. *Compare Scott v. Lacy,* 811 F.2d 1153 (7th Cir.1987) (per curiam) (appealable); *Kennedy v. City of Cleveland,* 797 F.2d 297, 306 (6th Cir.1986) (same), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187, 1190 (1st Cir.1986) (same) *and Tubbesing v. Arnold,* 742 F.2d 401, 404 (8th Cir.1984) (same) *with Riley v. Wainwright,* 810 F.2d 1006, 1007 (11th Cir.1987) (per curiam) (presence of claim for injunctive relief alternative ground for denying appeal) *and Bever v. Gilbertson,* 724 F.2d 1083, 1086–87 (4th Cir.) (not appealable), *cert. denied,* 469 U.S. 948, 105 S.Ct. 349, 83 L.Ed.2d 285 (1984). Recently, this court joined the majority of circuit courts that have addressed the question. We held that a pending claim for injunctive relief does not preclude appellate jurisdiction over an interlocutory appeal of an order denying a summary judgment motion based on a defense of qualified immunity to a damages claim. *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 717–18 (10th Cir.1988). *DeVargas* forecloses any contention that the presence of a claim for injunctive relief curtails our jurisdiction in this case, and we proceed to review the district court's resolution of the qualified immunity question.

### III.

Qualified immunity is an affirmative defense that shields governmental officials from personal liability unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988). In two recent cases the Supreme Court has defined the scope of qualified immunity for police officers sued when the actions they have taken implicate fourth amendment interests. In *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Court held that officers applying for arrest or search warrants will lose the shield of immunity "[o]nly where the warrant appli-

cation is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Id.* at 344–45, 106 S.Ct. at 1097–98. In *Anderson v. Creighton,* —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court held that the shield of immunity protects police officers from liability for warrantless searches as long as the "objective (albeit fact-specific) question whether a reasonable officer could have believed [the] warrantless search to be lawful" can be answered affirmatively. *Id.* 107 S.Ct. at 3040. We hold that an analogous inquiry appropriately determines whether immunity will protect an officer from liability for a warrantless arrest.

Jones contends that his clearly established fourth amendment rights were violated in four ways. First, he claims the searches that preceded his June and April arrests were not supported by probable cause. Second, he argues that the June and April arrests themselves were improper because they were executed without arrest warrants. Third, he contends that his June and April arrests, as well as his September arrest, were unsupported by probable cause. Finally, Jones alleges that one of the officers filed a groundless escape charge against him in order to increase the bond Jones would need to pay in order to secure his release after he turned himself in to police on July 2, 1984. We examine each of these claims.

### A.

■ A reasonable officer could conclude that search warrants issued before each of Jones's first two arrests were supported by probable cause. On June 14, 1984, Detective Fiori submitted an affidavit for a warrant to search Jones's residence. The affidavit disclosed that a claims adjuster had good reason to believe that Jones was involved in a scheme to obtain a fraudulent insurance settlement for stolen goods that had been damaged in an automobile accident. The Fiori affidavit also revealed that there was good reason to believe that the stolen property, two color television sets and two VCRs, was at the Jones residence.

On April 18, 1985, Detective Webb submitted an affidavit indicating that a reliable confidential informant had observed Jones forging business checks that were subsequently passed to local stores for cash. Based on the information provided by the informant, Webb requested a search warrant to recover, from Jones's place of business, those implements and devices that could be used to commit such forgery.

In each instance, a reasonable officer could conclude that the decision to issue a search warrant was supported by probable cause. The objects of the searches were described with particularity in each of the warrants and the information provided in the affidavits was obtained from reliable sources.

### B.

■ Jones's second contention is that his arrests were invalid because the officers did not obtain arrest warrants. He relies on Colorado statutory and decisional law to argue that clearly established law requires arrest warrants in all cases. Section 1983 does not, however, provide a basis for redressing violations of *state* law, but only for those violations of *federal* law done under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). Thus, only if federal law required arrest warrants does Jones have a cognizable claim in this regard against these defendants for arresting without such warrants. Federal law does not impose such a requirement for either of Jones's arrests.

The June arrest occurred in Jones's home immediately after officers searched his home pursuant to a search warrant. Jones argues that because he was arrested at home, federal law requires an arrest warrant. His argument appears to rest on the Supreme Court's decision in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In *Payton*, police officers without *any* warrant entered a suspect's home in order to arrest him. The Supreme Court invalidated the arrest and held that the fourth amendment prohibits police officers from making warrantless and nonconsensual entries into suspects' homes to make routine felony arrests. Jones apparently reads *Payton* to say that home arrests are invalid unless accomplished pursuant to an *arrest* warrant even when police possess a *search* warrant. Plaintiff's contention fails to recognize, however, that after deciding that the fourth amendment prohibits a warrantless entry into a suspect's home in order to arrest him or her, the *Payton* Court went on to consider whether an arrest warrant was *sufficient* to permit entry into a home to make an arrest or whether a search warrant was also required. The Court held that an arrest warrant founded on probable cause carries with it the "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* It does not follow, however, that such an arrest warrant is required if the police possess a search warrant.

A search warrant represents a judicial determination that there is probable cause to invade the privacy of the suspect's home. The impartial determination that supports the issuance of a *search* warrant justifies a greater intrusion than that supporting the issuance of an arrest warrant. Thus, once an officer has procured a *search* warrant, the privacy interests that led to the imposition of an *arrest* warrant requirement in *Payton* have been protected. *See* 1 W. LaFave & J. Israel, *Criminal Procedure* § 3.6, at 27 (Supp.1988) (arrest warrant "requirement is inapplicable when the police are otherwise lawfully present within the premises, such as to execute a search warrant"). We therefore hold that neither the arrest at Jones's business nor the one at his home required separate arrest warrants since both arrests were made while officers were legally on the premises pursuant to a search warrant. Jones's argument that the officers violated clearly established federal law by arresting him without warrants therefore fails.

### C.

■ Jones's third argument is that all three of his arrests were accomplished

without probable cause and that the officers therefore violated clearly established law. The officers will lose the shield of immunity only if reasonable officers could not have believed that Jones's arrests were based on probable cause. *See Anderson,* 107 S.Ct. at 3040. *Id.; Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Swingler,* 758 F.2d 477, 486 (10th Cir.1985). In support of their contention that their decisions to arrest Jones in April and June were objectively reasonable, the defendants submitted the probable cause affidavits that led the magistrate to issue the search warrants. They also submitted affidavits from the officers that describe the events surrounding each arrest. To show the reasonableness of the September arrest, which was made pursuant to a warrant, defendants submitted the affidavit used to obtain the arrest warrant.

The materials the defendants submitted demonstrate the objective reasonableness of each arrest. First, the probable cause affidavit that Fiori presented to obtain the June search warrant indicated that Jones had been participating in a fraudulent insurance claim scheme. When Fiori and Vacca searched the Jones residence they found the items listed in the warrant and arrested Jones. Second, the probable cause affidavit that Webb presented to obtain the April search warrant indicated that Jones was forging business checks and cashing them in Denver area stores. When Webb executed the search warrant he found the items listed on the warrant and arrested Jones. The information contained in the search warrant affidavits, when combined with the fact that (1) the officers found the items listed when they performed the searches and (2) Jones was present in the places where the items were found, could lead a reasonable officer to conclude that probable cause existed to arrest Jones. Finally, the affidavit used to obtain the arrest warrant for the September arrest contained much of the information that was in the affidavit submitted to obtain the April search warrant, but it also related information obtained from two grocery store employees that implicated Jones even more clearly in a check forging scheme. Thus, a reasonable officer could conclude that probable cause existed for all three of Jones's arrests.

### D.

 Finally, Jones argues that Thiede filed a groundless escape charge against him in order to increase the bond Jones would have to pay for release after he surrendered to police on July 2, 1984. Our review of the record convinces us that a police officer in Thiede's position could have reasonably believed that the escape charge should have been filed. Jones himself admits that after his first arrest in June 1984, he "peaceably removed himself" from detention. Given that admission, we conclude that immunity shields Thiede's decision to file the escape charge.

### IV.

In response to the defendants' contentions, the plaintiff submitted an affidavit under rule 56(f) in which he argues that he is unable to submit affidavits opposing defendants' summary judgment motion without some discovery. Thus, we must determine how motions submitted under rule 56(f) are to be evaluated when proffered in opposition to summary judgment motions based on the qualified immunity defense.

 Under rule 56(f), a district court may defer its ruling on a summary judgment motion and call for additional discovery when affidavits of the party opposing the motion indicate that "the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Fed.R.Civ.P. 56(f). Generally, affidavits submitted under rule 56(f) are entitled to liberal treatment unless they are dilatory or meritless. *Patty Precision v. Brown & Sharpe Mfg. Co.,* 742 F.2d 1260,

1264 (10th Cir.1984). However, there are limits regarding when relief under rule 56(f) should be granted. For instance, the mere assertion that evidence supporting a party's allegation is in the opposing party's hands is insufficient to justify a denial of a summary judgment motion on rule 56(f) grounds. *Patty Precision,* 742 F.2d at 1264. Similarly, such relief should not be granted when the desired discovery would not meet the issue on which the moving party contends there is no genuine factual issue. *Cf. Powers v. McGuigan,* 769 F.2d 72, 76 (2d Cir.1985). This court has stated that "the party filing the [rule 56(f)] affidavit must show how additional time will enable him to rebut movant's allegations of no genuine issue of fact." *Patty Precision,* 742 F.2d at 1264. In addition to these general requirements a district court's rule 56(f) discretion is further restricted when a summary judgment motion based on qualified immunity is at issue. *Martin v. Malhoyt,* 830 F.2d 237, 256–57 (D.C.Cir.1987). Rule 56(f) discretion must be limited when a summary judgment motion is based on qualified immunity because insubstantial lawsuits "against government officials [should] be resolved *prior to discovery and on summary judgment* if possible." *Anderson,* 107 S.Ct. at 3039 n. 2 (emphasis added); *see also Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39; *Martin v. D.C. Metro. Police Dep't,* 812 F.2d 1425, 1430 (D.C.Cir.1987) ("Discovery is itself one of the burdens from which defendants are sheltered by the immunity doctrine");[3] *Pueblo Neighborhood,* 847 F.2d at 645. Liberal application of rule 56(f) should not be allowed to subvert the goals of *Harlow* and its progeny. Unless parties opposing qualified immunity based summary judgment motions are required to show how discovery will enable them to rebut a defendant's showing of objective reasonableness, summary judgment should be granted.

■ In this case, the defendants have submitted materials that support their assertion that their actions were objectively reasonable. If the plaintiff is unable to demonstrate the existence of a factual dispute, he would be entitled to pursue limited discovery *if* in his affidavit requesting rule 56(f) relief, he indicated how the information he desires would undercut the showing of objective reasonableness that these three defendants have made.

The rule 56(f) affidavit Jones has submitted does indicate that he will need discovery for *some* of the claims he has asserted in this lawsuit. For example, he will be unable to name the "Doe" defendants without at least some discovery. Regarding the three officers pursuing this appeal, however, Jones's affidavit fails to show that there is any connection between the information he would seek in discovery and the validity of the officers' qualified immunity assertion. Thus, because the officers have demonstrated that their actions were objectively reasonable, they are entitled to summary judgment.

V.

We hold that the searches preceding the June and April arrests were supported by probable cause and that the officers' decisions to arrest following those searches were reasonable. Additionally, we hold that the officers who submitted affidavits in support of the warrant leading to the September arrest are immune because those affidavits were not totally lacking in indicia of probable cause. The district court's denial of summary judgment for these claims against these defendants is reversed and this case is remanded to the district court for proceedings on the remaining claims.

---

**3.** The District of Columbia Circuit initially granted rehearing en banc and vacated part IV of the *Martin* opinion, *Martin v. D.C. Metro. Police Dep't,* 817 F.2d 144 (D.C.Cir.1987), but has since reconsidered that decision, denied the en banc petition, and reinstated part IV of the opinion, *Bartlett ex rel. Neuman v. Bowen,* 824 F.2d 1240 (D.C.Cir.1987).